UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL DALE DICKERSON,

Plaintiff,

v.                                              CASE NO.  8:10-CV-729-T-17AEP

COMMUNITY WEST BANK,

Defendant.

_____/

ORDER

This cause is before the Court on:

Dkt. 24   Amended Complaint
Dkt. 25   Notice of Filing - Exhibits A-C
Dkt. 26   Notice of Filing - Exhibits D-E
Dkt. 27   Notice of Filing - Exhibits F-H
Dkt. 28   Notice of Filing - Exhibits I-M
Dkt. 29   Notice of Filing - Exhibits N-U
Dkt. 30   Notice of Filing - Corrected Exhibit D-1
Dkt. 31   Motion to Dismiss, Alternative Motion for Summary Judgment
Dkt. 32   Affidavit in Support of Motion for Summary Final Judgment
Dkt. 42   Affidavit in Opposition
Dkt. 43   Affidavit in Opposition
Dkt. 44   Notice of Filing - Corrected Exhibit G-3
Dkt. 45   Notice of Filing - Exhibits V-W
Dkt. 46   Response
Dkt. 48   Reply to Response (Dkt. 46)
Dkt. 49   Response in Opposition
Dkt. 51   Notice to Take Judicial Notice
Dkt. 68   Notice

Case No. 8:09-CV-729-T-17AEP

In this case, Plaintiff Michael Dale Dickerson asserts claims as guarantor of a business loan which Partsmax of Tampa Bay, Inc. obtained from Defendant Community West Bank ("CWB").   The Small Business Administration ("SBA") approved CWB's application for SBA to guarantee 75% of the loan to Plaintiff.  (Dkt. 26-1, p. 1).

The Amended Complaint (Dkt. 24) includes the following Counts:

| | |
|---|---|
| Count I | Fraud in the Inducement |
| Count II | Fraudulent Misrepresentation |
| Count III | Negligent Misrepresentation |
| Count IV | Negligent Supervision |
| Count V | Respondeat Superior Vicarious Liability |
| Count VI | Breach of Fiduciary Duty |
| Count VII | Breach of Contract |
| Count VIII | Rescission |
| Count IX | Conversion |
| Count X | Indemnification |
| Count XI | Theft |
| Count XII | Fair Debt Collection Practices Act Violation of 15 U.S.C. Sec. 1692g |

The basis of jurisdiction is federal question, and diversity.  Plaintiff Dickerson further alleges that the Court has jurisdiction to grant declaratory relief as to an actual controversy within the Court's jurisdiction.

As to Counts I through V, Plaintiff Dickerson seeks the award of compensatory damages, including loss of Plaintiff's initial investment of personal cash infusion toward the purchase price and closing costs, all closing costs and fees, all principal and interest paid by Plaintiff's solely owned business Partsmax of Tampa Bay, Inc., all loss of value from the alleged flawed sale of inventory and business assets placed in Defendant's control by U.S. Bankruptcy Trustee, and return of all proceeds from Plaintiff's pledged stock account, plus transaction fees, federal capital gains taxes and other associated costs, due to Defendant's alleged tortious conduct, and other

2

Case No. 8:09-CV-729-T-17AEP

consequential damages, in an amount according to proof, and punitive damages, in an amount appropriate to punish Defendant, to deter others from engaging in such conduct, and to set an example.

As to Count VI, Plaintiff seeks the award of compensatory damages, including the loss of full value from the alleged improper sale of inventory and business assets by Defendant, and the return of all proceeds from Plaintiff's pledged stock account, plus transaction fees, federal capital gains taxes and other associated costs, due to Defendant's conduct, and other consequential damages, in an amount according to proof, and punitive damages, as described above.

As to Count VII, Plaintiff requests that the Court find in favor of Plaintiff for rescission of the contract between Plaintiff as guarantor and Defendant, and release Plaintiff from all collateral claims, life insurance obligations, and any other demand held by Defendant.  Plaintiff further seeks the return of all Plaintiff's rightful property and other assets that Defendant allegedly improperly seized, such as Plaintiff's pledged stock account, and the reimbursement for all Plaintiff's personal funds for purchase [of] assets from Partsmax, Inc., and the SBA 7(a) loan closing costs and fees.

As to Count VIII, Plaintiff seeks the award of compensatory damages, including the loss of Plaintiff's initial investment, all interest and principal paid by Plaintiff's solely owned business Partsmax of Tampa Bay, Inc. to Defendant for a loan, and all principal and interest paid to Partsmax, Inc. for a Promissory Note and all loans Plaintiff made to Partsmax, Inc., and the return of all proceeds from Plaintiff's pledged stock account, plus transaction fees, federal capital gains taxes, and other associated costs, due to Defendant's alleged fraudulent inducement and misrepresentation, alleged egregious and treacherous conduct, and other consequential damages, in an amount according to proof, and punitive damages, as described above.

3

Case No. 8:09-CV-729-T-17AEP

As to Count IX, Plaintiff requests that the Court direct Defendant to return to Plaintiff all proceeds received from Defendant's alleged improper conversion of Plaintiff's personal property, the pledged stock account, and reimbursement for all transaction fees and federal capital gains taxes, due to Defendant's alleged wrongful acts.

As to Count X, Plaintiff requests that the Court direct Defendant to return to Plaintiff all proceeds received from Defendant's alleged improper seizure of Plaintiff's personal property, the pledged stock account, and reimbursement for all transaction fees and federal capital gains taxes, due to Defendant's alleged wrongful acts.

As to Count XI, Plaintiff requests the Court direct Defendant to return to Plaintiff all proceeds received from Defendant's alleged theft of Plaintiff's personal property, the pledged stock account, and reimbursement of all transaction fees and federal capital gains taxes, due to Defendant's alleged wrongful acts.

As to Count XII, Plaintiff requests that the Court direct Defendant to return to Plaintiff all proceeds received from Defendant's alleged violation of FDCPA, and reimburse Plaintiff for all fees, and taxes due to Defendant's alleged wrongful acts.

Plaintiff also seeks as declaratory judgment which: 1) enjoins Defendant from attempting to recover any Guarantor obligations associated with PLP Loan #200-862-6000 from Plaintiff, 2) requires Defendant to return all assets, transactions fees and federal capital gains taxes related to the pledged stock account to Plaintiff, to remove; 3) [rescinds] all collateral agreements and mortgages on Plaintiff's homestead and enjoins Defendant from any future attempt to seek or place demands on Plaintiff; 4) removes and [rescinds] any and all claims for assignment of life insurance proceeds on Plaintiff's life and enjoins Defendant from any future attempts to seek or place demands on Plaintiff.

4

Case No. 8:10-CV-729-T-17AEP

Plaintiff further seeks the award of attorney's fees and costs as to each claim for relief.

In Defendant's Motion to Dismiss, Defendant Community West Bank seeks the dismissal of this case with prejudice, pursuant to Rule 12(b)(6), or the grant of summary judgment in favor of Defendant, pursuant to Rule 56.

I. Standard of Review
A. Motion to Dismiss

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," Id., at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. Two working principles underlie Twombly. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Id., at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. Id., at 556. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1955-1956 (2009)(quoting Bell Atlantic v. Twombly, 550 U.S. 544

Case No. 8:10-CV-729-T-17AEP

(2007).

Because Plaintiff is proceeding pro se, Plaintiff's pleadings are held to a less stringent standard than pleadings drafted by an attorney, and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003).

B.  Attachments to Complaint and Motion to Dismiss

In determining a motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.  La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).  The Court may consider documents which are central to plaintiff's claim whose authenticity is not challenged, whether the document is physically attached to the complaint or not, without converting the motion into one for summary judgment. Speaker v. U.S. Dept of , 623 F.3d 1371, 1379 (11th Cir. 2010); SFM Holdings, Ltd. v. Bank of Am. Secs., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n. 3 (11th Cir. 2005).  Where the allegations of the complaint are contradicted by exhibits, the plain meaning of the exhibits controls.  Griffin Industries, Inc. v. Irvin, 496 F.3d 1189 (11th Cir. 2007).  Exhibits to the complaint are part of the pleadings for all purposes.  Solis-Ramirez v. U.S. Dept. of Justice, 756 F.25d 1426, 1430 (11th Cir. 1985).

C.  Motion for Summary Judgment

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Case No. 8:10-CV-729-T-17AEP

> "The plain language of Rule 56(c) mandates the entry of
> summary judgment after adequate time for discovery and
> upon motion, against a party who fails to make a showing
> sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the
> burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are
material and which facts are...irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  All reasonable doubts about the facts and all justifiable inferences are
resolved in favor of the non-movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112,
1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable
jury could return a verdict for the non-moving party."  See Anderson, 477 U.S. at 248.
But, "[i]f the evidence is merely colorable...or is not significantly probative...summary
judgment may be granted."  Id. at 249-50.

II.   Statement of Facts

1.   The Articles of Incorporation of Partsmax of Tampa Bay, Inc. were filed with
the Florida Division of Corporations on October 17, 2005.  Partsmax of Tampa Bay, Inc.
was incorporated by Plaintiff Michael D. Dickerson.

2.  On November 5, 2005, Plaintiff Dickerson applied to CIT for an SBA loan of
$1,084,600.  (Dkts. 28-2, 28-3).  CIT would not approve the loan for more than
$575,000.  (Dkt. 24, p. 5).    After the denial, Plaintiff was referred to Defendant CWB.

3.  The SBA renewed its approval of  Defendant CWB as a PLP lender on
September 28, 2004.  (Dkt. 28-7, pp. 2-4).  Defendant CWB and the SBA entered into

7

Case No. 8:10-CV-729-T-17AEP

the Supplemental Guaranty Agreement, Preferred Lenders Program. (Dkt. 28-7, pp. 4-6).

4.  Plaintiff alleges that Patrick McEvoy, CWB, encouraged Plaintiff to resubmit the SBA loan application to Defendant CWB for review and approval under SBA guidelines.  (Dkt. 24, p. 6).

5.  Plaintiff alleges that Defendant CWB required a written agreement between buyer and seller to complete the loan approval process.  (Dkt. 24, p. 6).

6.  On January 26, 2006, Partsmax of Tampa Bay, Inc., by its President, Plaintiff Michael Dale Dickerson, entered into an Asset Purchase Agreement with Partsmax, Inc., by Manny Roman, its President, in the amount of $1,200,000.00.  (Dkt. 28-4, pp. 5-14).  The Asset Purchase Agreement was subsequently amended. (Dkt. 28-4, pp. 1-4).

7.  The Asset Purchase Agreement (Dkt. 28-4) provides:

**9.  <u>REPRESENTATIONS.</u>**

......

C.  Buyer has had an opportunity to have its own independent accountant or financial adviser review all relevant financial documents prior to the Closing Date.  It is solely upon the basis of the accuracy of the data in the financial documents actually reviewed by Buyer and Buyer's independent accountant and/or financial advisor(s) and Buyer's due diligence inspections, and not based upon any oral representations of Seller, that Buyer shall make an independent and knowledgeable decision to purchase the Business.  Buyer agrees that Seller does not warrant the future viability of the business nor future sales or profits, nor

Case No. 8:10-CV-729-T-17AEP

Buyer's success in the operating of the Business......

(Dkt. 28-4, p. 10).

......

16. **MISCELLANEOUS.**

A. The Parties agree that the values assigned to the items
included in the purchase price as set forth herein are fair
and reasonable and have been bargained for separately and
at arms length after consultation with their accountants,
attorneys and other advisors as may be applicable. It is
agreed that the purchase price herein of ONE MILLION
TWO HUNDRED THOUSAND AND NO/100 DOLLARS
($1,200,000.00) shall be allocated as follows until a detailed
inventory and due diligence is complete: Machinery &
Equipment $200,000.00; Inventory $500,000.00; Goodwill
$300,000.00; and Restrictive Covenant $200,00.000.

......

D. Buyer, its principals and employees, acknowledge this
business as with any business involves financial risks and
Seller has not made any promises, guarantees, warranties
or representations as to the profitability and/or future
success of this business and Buyer, its principals and
employees, have agreed to purchase this business at their
own risk.

......

F. Buyer hereby warrants and represents it has had ample
opportunity to review and investigate the specifics of the
Business. Buyer has had the opportunity to make a full and
independent investigation of all financial and professional
matters. Buyer is fully satisfied that all relevant information
has been disclosed to it.

(Dkt. 28-4, p, 12).

Case No. 8:10-CV-729-T-17AEP

8.  Plaintiff Dickerson provided the Asset Purchase Agreement to Defendant CWB after the Agreement was executed on January 26, 2006.

9.  Defendant CWB required the Seller, Partsmax, Inc., through Manny F. Roman, to provide CPA-prepared financial statements to support the offering price of the subject business assets.

10.  On November 8, 2005, Seller's accountant, Keith Blank, CPA, asked Plaintiff to check with Defendant CWB as to whether Defendant CWB would accept internally generated financial statements for 2005 (through September). (Dkt. 29-5).

11.  Defendant CWB agreed to the request of Keith Blank, CPA on January 26, 2006.

12.  On April 3, 2006, Keith Blank, CPA, attested that the financial statements for December 2004 and December 2005 for Partsmax, Inc. presented to Defendant by Partsmax, Inc., through Manny Roman, were accurate and reflected the financial condition of the company. (Dkt. 29-6).

13.  CWB's request for approval to SBA dated April 20, 2006, reflects that during underwriting, the allocation of the assets Partsmax of Tampa Bay, Inc. agreed to purchase changed to the following amounts:

| | |
|---|---|
| Machinery and Equipment $ | 48,000 |
| Vehicles (5) | 24,000 |
| Inventory | 511,890 |
| Restrictive Covenant | 350,000 |
| Goodwill | 265,310 |

(Dkt. 26-4, p. 4).

Case No. 8:10-CV-729-T-17AEP

14.  On April 21, 2006, Patrick McEvoy, a senior executive with Defendant CWB, showed an internal business valuation document prepared by CWB for CWB to Plaintiff Dickerson.  The document includes the statement:

> Using the two approved methods of valuing a business by SBA, it is determined the value of the business ranges from $1,513.848 to $1,614,800 and the computations are shown on page 17 and 18 of this report.  The borrower is purchasing the business for less than these amounts.

(Dkt. 26-4, p. 4).

15.  The internally generated business valuation included Defendant's calculation of the value of Partsmax, Inc. using two methods, the discounted future earnings method, which yielded a value of $1,614,800, and the capitalized adjusted earnings method, which yielded a value of $1,513,848.  (Dkt. 31-1, pp. 31-32).

16.  On April 21, 2006, Defendant CWB conditionally approved Partsmax of Tampa Bay Inc.'s SBA Loan Request for a business loan in the amount of  $687,800, and requested Plaintiff to sign and return a copy of the Approval letter so Defendant could begin the Loan Documentation process.  The Approval letter includes a summary of the loan terms and conditions of the loan commitment, identifying the Borrower, Guarantor, Loan Amount, Use of Proceeds, Equity Contributions, Term, Interest Rate, Monthly Payments, SBA Loan conditions, SBA Loan Guaranty Fee, Bank Fee, Collateral, Disbursement of Loan Proceeds, and Other Costs.  The SBA Loan conditions provide:

> ......
>
> Lender's obligations hereunder are subject to the receipt of a written authorization for a SBA Section 7(a) loan guarantee of the Loan and are conditioned upon the Borrower's acceptance of the terms and conditions of said Loan Authorization.

Case No. 8:10-CV-729-T-17AEP

The Approval letter also includes an Acceptance Expiration Date of May 19, 2006, and a Commitment Expiration Date of October 20, 2006.   The Approval letter offers the loan to Partsmax of Tampa Bay, Inc., subject to the approval of its President, Plaintiff Michael Dale Dickerson.  (Dkt. 27-5).

17.  The Approval letter specifies the conditions of the Loan Commitment, including:

1)      All available collateral to be pledged as additional collateral on loan as required by Community West Bank and the U.S. Small Business Administration.......

(Dkt. 27-5, p. 4).

18.  Defendant CWB explained the process of completing the loan, including the functions of the Underwriter and Loan Processor. (Dkt. 27-6).

19.  The Approval letter includes the following term:

**Guarantor:**      The payment of all sums advanced under the Loan and the performance of all terms, covenants, and conditions of the Note evidencing the Loan, shall be unconditionally guaranteed, jointly and severally by each Guarantor identified below, on a form specified by Lender.

Michael Dale Dickerson

(Dkt. 27-5, p. 1).

20.  Partsmax of Tampa Bay, Inc., by Michael D. Dickerson, President/Secretary, accepted and approved the loan offered on May 6, 2006, and Guarantor Michael Dale

Case No. 8:10-CV-729-T-17AEP

Dickerson accepted and approved the loan offered on May 6, 2006.  (Dkt. 27-6, p. 4),

21.   The SBA approved Defendant CWB's application, received on May 12, 2006, for SBA to guarantee 75.00% of a loan in the amount of $687,000 to assist Borrower Partsmax of Tampa Bay, Inc.  (Dkts. 26-1, 26-2).  The SBA Authorization states in detail the Guarantee Fee, the Ongoing Service Fee, Lender's Sole Responsibility, Required Forms, Contingencies on which the Authorization is based, the Note Terms, the Use of Proceeds, the Collateral Conditions, and Additional Conditions.

22.  The Required Forms Lender must use in connection with the Loan include:
SBA Form 147, Note
SBA Form 1050, Settlement Sheet, for each disbursement
SBA Form 159, Compensation Agreement, for each representative
SBA Form 722, Equal Opportunity Poster
SBA Form 148, Guarantee

(Dkt. 26-1, p. 2).

23.  Additional Condition #6, Certifications and Agreements, provides:

a.   Lender must require Borrower to certify that:

1.  **Receipt of Authorization**–Borrower has received a copy of this Authorization from the  Lender and acknowledges that:

(a)   The Authorization is <u>not</u> a commitment by Lender to make a loan to Borrower;

(b)   The Authorization is between Lender and SBA and creates no third party rights or benefits to Borrower;

(c)   The Note will require Borrower to give Lender prior notice of intent to prepay.

(d)   If Borrower defaults on Loan, SBA may be required to pay Lender under the SBA guarantee.  SBA may then seek recovery of these funds from Borrower.  Under SBA regulations, 13 CFR Part 101, Borrower may not claim or assert against SBA any immunities or

13

Case No. 8:10-CV-729-T-17AEP

> defenses available under local law to defeat, modify or otherwise limit Borrower's obligation to repay to SBA any funds advanced by Lender to Borrower.
>
> (e)   Payments by SBA to Lender under SBA's guarantee will not apply to the Loan account of Borrower, or diminish the indebtedness of Borrower under the Note or the obligation of any personal guarantor of the Note.

24. The Loan closed on May 31, 2006.

25.  The Loan Documents provided by Plaintiff include the Loan Agreement (Leasehold) (Dkt. 25-1), Personal Financial Statement (SBA Form 413) (Dkt. 25-2), the Stock Pledge Agreement (Dkt. 25-4), Merrill Lynch Pledged Collateral Account Control Agreement (Dkt. 25-5), and Mortgage, Assignment of Leases and Rents and Security Agreement (Dkt. 25-6), Loan Agreement (Dkt. 30-1).

26.   The Loan Documents provided by Defendant include the Unconditional Guarantee (Dkt. 68-1, pp. 1-5) and the Note (Dkt. 68-1, pp. 6-11).

27. The Loan Agreement (Dkt. 25-1, p. 2) specifies that conditions precedent to the Loan include delivery of the following documents to Lender:

a.   The Note
b.   The Security Agreement
c.   UCC-1 Financing Statements
d.   Evidence satisfactory to Lender of ownership of the Collateral by Borrower free and clear of encumbrances of any kind
e.   Collateral Assignment of Lease
f.   Such other documents as reasonably may be required by the Lender or Lender's Counsel.

Case No. 8:10-CV-729-T-17AEP

28. In the Loan Agreement, Article VII, Collateral, states:

Borrower's obligation for payment of the Note shall be collateralized by a first secured interest in all of the Borrower's rights, title and interest in and to each of the following, wherever located and whether now or hereafter existing or now owned or hereafter acquired or arising (the "Collateral"):

| | |
|---|---|
| (a) | All Machinery; |
| (b) | All Equipment; |
| (c) | All Furniture; |
| (d) | All Fixtures; |
| (e) | All Inventory; |
| (f) | All Accounts; |
| (g) | All Contract Rights; |
| (h) | All Documents; |
| (i) | All Instruments; |
| (j) | All Chattel Paper; |
| (k) | All General Intangibles; and |
| (l) | All Motored Vehicles (listed in H.26 of the Loan Authorization) |

(Dkt. 25-1, p. 9).

29. Defendant CWB filed a UCC financing statement with the Florida Secured Transactions Registry on June 14, 2006, #200602909463, to secure Defendant's interest in the Borrower's assets. (Exhibit attached).

30. The Loan Agreement specifies the events of default (Dkt. 25-1, p. 6):

a.   Nonpayment, when due, of any principal, accrued interest, premium, fee or other charge due under the Note;

b.   Default by Borrower and Guarantor in the due observance or performance of any term, covenant, condition or agreement on its part to be performed under this Loan Agreement, the Note, or any other document contemplated by this Loan Agreement, or under any other loan in favor of this Lender, herein.

Case No. 8:10-CV-729-T-17AEP

    c.  If Borrower shall:

    ......

    (2)     File a voluntary petition in bankruptcy

    ......

    (8)     Be unable to pay its debts as they become due.

    d.     Borrower and Guarantor fail to have vacated or set aside within thirty (30 days of its entry any court order appointing a receiver or trustee for all or a substantial portion of the Borrower's property.

    e.     Any warranty, representation or statements made or furnished to Lender by Borrower and Guarantor in connection with the Loan or in Connection with this Agreement (including any warranty, representation or statement in the application of Borrower for the Loan or in any accompanying financial statements) or to induce Lender to make the Loan, proves to be untrue, misleading or false in any material respect.

    ......

    g.     Borrower defaults in the payment of any principal or interest on any obligation to Lender or to any other creditor.

    ......

                Upon the occurrence of any Event of Default as defined in this Agreement and any of the Loan Documents, (i) Lender shall give written notice to Borrower of a monetary default hereunder, and Borrower shall have a period of ten (10) days thereafter to cure such monetary default, and (ii) Lender shall give written notice to Borrower of a non-monetary default hereunder, and Borrower shall have a period of thirty (30) days thereafter to cure such non-monetary default (provided that the Lender shall have no obligation to provide more than three (3) written default notices to the Borrower, within any given calendar year). (Dkt. 25-1, pp. 6-7).

    31. The Mortgage, Assignment of Leases and Rents, and Security Agreement (Dkt. 25-6) was given to secure the personal guaranty signed by Plaintiff Michael D. Dickerson, wherein Plaintiff Dickerson personally guaranteed payment of all indebtedness of Partsmax of Tampa Bay, Inc., as Borrower, and Community West Bank, as Lender. (Dkt. 25-6, p. 1).

Case No. 8:10-CV-729-T-17AEP

32. The Mortgage, Assignment of Leases and Rents, and Security Agreement (Dkt. 25-6) specifically provides that it is intended to secure the personal guaranty of Plaintiff, and does not represent monies or sums advanced to Plaintiff Dickerson individually, but rather sums advanced to Partsmax of Tampa Bay, Inc., evidenced by the Note executed by Partsmax of Tampa Bay, Inc. made to Community West Bank in the amount of $687,000.00.

33. The Mortgage, Assignment of Leases and Rents, and Security Agreement (Dkt. 25-6) provides:

> 33.   **Debtor-Creditor Relationship Only**.    It is understood by and between the Mortgagee and the Mortgagor, that the funds received on the Note which are secured by this Mortgage, create the relationship of lender and borrower, and it is not the intention of the parties to create the relationship of a partnership, a joint venture or syndicate, or mutual enterprise or endeavor.

(Dkt. 25-5, p. 22).

34. The Mortgage, Assignment of Leases and Rents, and Security Agreement provides that the Mortgage shall be construed and enforced according to the laws of the State of Florida, without reference to the conflicts of law principles of that State. (Dkt. 25-6, p. 21).

35. The Stock Pledge Agreement states that Pledgor Dickerson executed and delivered the Guaranty to Lender to induce Lender to enter into the Loan Agreement with Borrower, Partsmax of Tampa Bay, Inc.; in the Guaranty, Pledger guaranteed due and punctual payment in full of all principal and interest and premium, if any, on, and all other amounts in respect of, all amount due under the Note (the "Secured Obligations"). (Dkt. 25-4, p. 1).

Case No. 8:10-CV-729-T-17AEP

36.  The Stock Pledge Agreement states that Lender is willing to extend the financial accommodations to Borrower contemplated by the Loan Agreement only if Pledgor makes and delivers this Agreement in favor of Lender to secure the Secured Obligations.  (Dkt. 25-4).

37.  Pursuant to the Stock Pledge Agreement, Pledgor granted Lender a security interest in all the shares, together with proceeds thereof and all cash, additional securities or other property at any time and from time to time receivable or otherwise distributed in respect of or in exchange for any and all such securities.  Such securities, proceeds thereof, cash, additional securities, substitutions, replacements and other property are the "Collateral."  (Dkt. 25-4, p. 1).  The Pledge Agreement and the security interest granted to Lender were made to secure payment in full of the Secured Obligations.  (Dkt. 25-4, p. 1).

38.  The Stock Pledge Agreement provides it shall be construed in accordance with and governed by the laws of the State of Georgia.  (Dkt. 25-4, p. 5).  The Stock Pledge Agreement further provides it may not be amended or modified, nor may the Collateral be released or the pledge or security interest created hereby extended, except in writing signed by the parties to the Agreement.  (Dkt. 25-4, p. 5).

39.  On May 31, 2007, Borrower's stockbroker asked Lender CWB to allow trading in the pledged stock account.  (Dkt. 29-2).

40.  Lender CWB did not approve the Borrower's request, and explained the basis for the decision.  (Dkt. 29-1).

41.  On August 23, 2008, Borrower Partsmax of Tampa Bay, Inc., by its President, requested a deferral of payment on the loan for a minimum of six months. (Dkt. 29-3).

Case No. 8:10-CV-729-T-17AEP

42. On November 11, 2008, Partsmax of Tampa Bay, Inc. filed a voluntary petition under Chapter 7 in the Bankruptcy Court, Case No. 8:08-bk-17881-CPM. The initial meeting of creditors was held by the trustee on December 16, 2008. Trustee Lauren Green filed a Report of No Distribution on February 2, 2009. The Final Decree was entered on March 10, 2009, and the case was closed. (Exhibit attached).

43. On November 11, 2008, the debtor's Schedule F, Creditors Holding Unsecured Nonpriority Claims, included $602,774.70 for a Small Business loan to Community West Bank, and $273,250.34 for a promissory note to Partsmax, Inc. The debtor's Schedule B, Personal Property, lists the following:

| | | |
|---|---|---|
| Goodwill | $ | 212,248. |
| Restrictive Covenant | | 297,500. |
| Automobiles | | 2,000. |
| Computer Equipment | | 3,953. |
| Furniture/fixtures | | 75. |
| General Office Equipment | | 1,597. |
| Machinery & Equipment | | 7,524. |
| Inventory | | 243,053.96 |
| Inventory (attached) | | 273,866.27 |

In the debtor's Statement of Financial Affairs, the debtor states May 30, 2006 as the date of inventory, Michael Dickerson as Inventory Supervisor, and inventory valued at $273,866.27 (estimated value).

44. On March 2, 2009, Lender CWB, notified Plaintiff Michael Dale Dickerson that Partsmax has failed to make payments due under the Note, and the Bank had previously notified Partsmax of its failure to do so, and of the Bank's election to declare the entire balance of indebtedness immediately due and payable. The notice letter further states that Partsmax has filed a bankruptcy, which is also an Event of Default. The letter made demand on the Guarantor, Michael Dale Dickerson, for all amounts due under the Note, under the terms of the Guarantee. The notice letter states that the Guarantee is secured by the Stock Pledge Agreement, executed and delivered by

19

Case No. 8:10-CV-729-T-17AEP

Plaintiff Dickerson individually. (Dkt. 29-12).

45. On March 3, 2009, the Bank reiterated the previous notice, and further notified Plaintiff that Plaintiff was in default of Plaintiff's obligations under the terms of the Guarantee by the failure to pay all amounts due under the Note when the Bank demanded that Plaintiff do so. The Bank notified Plaintiff Dickerson that the failure to comply with the terms of the Guarantee is an Event of Default under the terms of the Stock Pledge Agreement. The Bank notified Plaintiff that the failure to cure within thirty days of the date of the letter is an Event of Default under the Pledge Agreement, and that the Bank will sell the shares at a private sale after thirty days from the date of the letter, apply the proceeds to the costs of exercising its remedies, and apply the remaining proceeds under the terms of the Guarantee. (Dkt. 29-13).

46. On April 2, 2009, Defendant CWB notified Plaintiff that the Bank believed it was entitled to proceed with enforcement of its security interests upon the expiration of the notice periods. The Bank notified Plaintiff Dickerson that the notices were not withdrawn, and the Bank intended to proceed as previously notified. (Dkt. 29-14).

47. On April 5, 2009, Plaintiff Dickerson notified Defendant CWB of Plaintiff's belief that the Bank has not acted properly. Plaintiff requested an accounting of the property of Borrower Partsmax of Tampa Bay, Inc. turned over to Defendant CWB by the U.S. Bankruptcy Trustee, Lauren Greene. Plaintiff Dickerson stated "There is no accounting for this property, its disposition, and to whom." Plaintiff further stated that CWB has forfeited their rights of enforcement by not materially complying with SBA policy. Plaintiff stated that CWB had a fiduciary responsibility to comply and as guarantor, Plaintiff had a legal right and expectation that CWB had complied. Plaintiff's letter expresses Plaintiff's dissatisfaction with how the loan was made, closed, and serviced in addition to improper liquidation of collateral. Plaintiff stated that any further actions to liquidate the loan are suspended by the investigation Plaintiff has requested. (Dkt. 29-4).